# Haupt v. Pryse et al.

Dec. 13, 1938.

SAM HURST, Judge.

ROSE & STAMPER for appellant.

J. F. SUTTON, BEATTY & BEATTY, and C. E. TYREE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The subject of this litigation is a tract of land in Lee county on the Kentucky river said to contain 10 acres known as Sturgeon Bar together with accretions thereto. It was adjudged in the court below that appellees are the owners of the tract and that their title be quieted; that certain conveyances from the Kentucky Coal Development Company to A. G. Ronald dated December 27, 1919, were champertous and void in so far as they affected the 10 acre tract involved, as also was the transfer from Ronald to appellant.

In 1796 the commonwealth granted to Benjamin Waller a patent for a tract of land then in Madison but now in the county of Lee. So much of the description of the land as is pertinent or necessary to an understanding of the contention between the parties reads:

"Lying and being in the county of Madison on a south branch of the Kentucky River known as Sturgeon Creek running on the south side of the river and bound as followeth (towit): Beginning at the mouth of Sturgeon creek at a beech, buckeye and sugar tree, thence down the river W. 46 poles, north 80 W. 20 poles, N. 53 W. 20 poles to 2 sugar trees and an ash standing on the bank of the river: * * *"

Later the land described in the patent came into the possession of Brutus J. Clay, who by deed dated April 28, 1847, conveyed same to James Brandenburgh, the pertinent portions of the description being the same as that quoted from the patent. Thereafter James Brandenburgh mortgaged the tract conveyed to him by Brutus J. Clay and other tracts to a bank at Beattyville to secure certain indebtedness. In a foreclosure proceeding to satisfy the mortgage indebtedness the land was sold, and F. M. Snowden and Wm. Abner became the purchasers thereof and they later conveyed a one-third undivided interest therein to G. W. Gourley by deed dated August 15, 1900, and thereafter F. M. Snowden conveyed his one-third undivided interest to George P. Burke by deed dated November 23, 1901. By deed dated January 12, 1906, Burke, Abner and Gourley conveyed the land to the Kentucky River Coal and Coke Company and the latter conveyed same to the Kentucky Coal Development Company by deed dated April 22, 1907. By deed dated December 27, 1919, the Kentucky Coal Development Company conveyed the land to A. G. Ronald, trustee, investing him with title thereto. In an action pending in the Lee circuit court A. G. Ronald resigned as trustee and by judgment entered in such court on November 19, 1929, W. M. Haupt was appointed trustee thereunder and invested with title to the land.

On September 29, 1848, the commonwealth issued to James Brandenburgh a patent for the 10 acres of land referred to as lying in Owsley county, including an island in the Kentucky river and bound as follows:

"Beginning at a black locust and beech at the mouth of Sturgeon, thence W. 80 poles, thence N. 5 W. 20 poles, then E. 80 poles up said Kentucky river, thence S. 5 E. 20 poles to the beginning."

It is the contention of appellant that the patent issued to Waller and all subsequent conveyances included the 10 acres in controversy and that the line as set out

in the quoted descriptions from the patent follows the thread of the Kentucky river as it now runs. On the other hand, it is the contention of appellees that the line quoted from the patent follows a bayou or slough in which the Kentucky river or a portion thereof formerly ran and that the land in controversy lays between the line so following the slough and the Kentucky river as it now runs. They claim title under the James Brandenburgh patent of 1848 and also by adverse possession.

This litigation originated as an action between heirs of James Brandenburgh and the assigns of his heirs to have a sale of the 10 acre tract for division of the proceeds among the parties in interest. A forceable detainer proceeding of appellees against a tenant of appellant involving the land in controversy and in which the defendant was found guilty was consolidated with the action for the sale of the land. Appellant came into the action by intervening petition, answer, counterclaim and cross petition setting up the foregoing facts with reference to his chain of title and asserting title to the tract in controversy under the Waller patent and subsequent conveyances, including the mortgage from James Brandenburgh to the bank at Beattyville. He asked that his title to the land be quieted and that appellees be required to release all claims thereto and that their petition be dismissed and that appellees be perpetually enjoined and restrained from any entry or trespass on the land. By subsequent pleadings to support the claims of the respective parties the issues were completed.

Coming first to the question whether the Waller patent and the subsequent conveyances, mortgages and leases of the land conveyed thereby were intended to or did in fact include the land in controversy, we have the significant, if not conclusive, fact that when the patent for the 10 acres was issued to James Brandenburgh in 1848, he was the owner of the land covered by the Waller patent. The record as a whole gives rise to the practically inescapable inference that the main portion of the Kentucky river or at least a part of it ran along the bayou or slough where appellees claim the line between the land in controversy and the lines of the Waller patent run. The patent to Brandenburgh in 1848 refers to the land described therein as an island in the Kentucky river. There is evidence by a number of witnesses including a surveyor who testified that he located the lines of the Waller patent that it ran with the mean-

derings of the slough or bayou. There is also evidence that some years ago a fence was erected and maintained along that line. It is claimed by appellant that the mortgage from James Brandenburgh to the bank at Beattyville covered the land in controversy but we are unable to read that out of the descriptions in the mortgage. The line to the 551 acre tract is the same as the quoted line from the Waller patent except that there is a difference in the courses of one of the calls which apparently was a mistake, reading 8 instead of 80 as it does in prior and subsequent conveyances, etc. It is quite apparent that the land in controversy was not added to the land covered by the Waller patent by gradual accretion, since the evidence as above noted clearly indicates that 90 years ago this was an island in the Kentucky river and a portion of the river ran on each side of it. A number of tracts were included in the Brandenburgh mortgage to the bank and while the source of title is referred to in the descriptions in most if not all of them, no reference whatever is made to the land acquired by Brandenburgh under the 1848 patent. A surveyor introduced by appellees who made a survey of the 10 acre tract as well as the 551 acres covered by the Waller patent testified that neither the boundary to the patent issued to Brandenburgh in 1848 nor any part of it was included in the Waller patent. This surveyor located the line for Judge Gourley who at times represented owners, and finally became a joint owner of the land now owned by appellant. On the other hand the surveyor introduced by appellant testified that the boundary of land was included within the Waller patent.

Coming to the question of adverse possession there is evidence that since the patent was issued to James Brandenburgh he and those claiming under him have claimed and exercised ownership over the land in controversy; that since 1908 the widow and heirs of James Brandenburgh or their assigns have been leasing this land for cultivation and that it has in fact been in cultivation by or under them every year from that time. There is some evidence to the contrary but it is of a rather negative character and to the effect that the witnesses who passed near the land did not see crops on the land in certain years. All of them admitted that they did not know that the land was not cultivated every year and were not in position to see all of it at the times referred to. It appears in evidence that for more than

20 years prior to 1936 D. P. Brandenburgh, also known as Pryse Brandenburgh, was a lessee of appellant and those under whom he claims title and during a part of that time he also controlled and leased the land in controversy to others. It is contended by appellant that the leases included the tract in controversy and therefore the alleged possession under which appellees claim title was amicable to appellant's tenant, D. P. Brandenburgh, and therefore not adverse to appellant. But the description in the leases from appellant and those under whom he claims to Pryse Brandenburgh in describing the leased lands conforms to that portion of the description in the Waller patent above quoted.

In 1936 and after this litigation was initiated appellant tendered to Pryse Brandenburgh a lease following the meanderings of the Kentucky river which now of course would include the land in controversy but he refused to accept such lease. The evidence for appellees clearly shows that neither Pryse Brandenburgh nor their assigns nor any of the other heirs of James Brandenburgh ever considered the land in controversy as a part of the boundary owned by appellant or ever so treated it.

Pending a final hearing in the court below appellant moved the court for a temporary injunction in conformity with his pleading but this was denied and the record was brought before this court pursuant to the provisions of Section 297 of the Civil Code of Practice with a motion to grant the temporary injunction refused by the trial court. This motion was considered by the entire court upon the whole record and in a memorandum opinion rendered by Judge Thomas, which has not been published, the motion was overruled because as stated in the opinion the case was practically ready for final submission and no practical benefit could be gained by appellant if the temporary injunction should be granted; however, it was indicated in the opinion that the right of appellant to the relief sought on the merits was involved in extreme doubt. The contention of appellant that the exceptions to certain portions of the evidence of appellee should be sustained is meritorious; however, with all such evidence eliminated there still remains ample evidence to sustain the claims of appellees and, on the record as a whole, we unhesitatingly conclude that the finding and judgment of the chancellor is fully sustained by a great and preponderating

weight of evidence and therefore should not be disturbed.

Judgment affirmed.

Whole court sitting.